. THE STATE v. HERRELL, *Appellant.*

1. **Murder**: INDICTMENT. An indictment for murder which fails to charge that the homicidal act itself was done feloniously is insufficient, and this defect is not cured by the allegation that the assault was made feloniously, nor by the concluding words of the indictment, that the defendant did "feloniously," etc., "kill and murder," the words "feloniously," etc., previously alleged not being connected with the mortal stroke by the words "then and there."

2. ———— : SELF-DEFENSE. One who brings on a difficulty with the purpose of wreaking his malice by slaying his adversary or doing him some great bodily harm, and, actuated by such a felonious purpose, does the homicidal act, cannot avail himself of the right of self-defense and is guilty of murder in the first degree.

3. ———— : ————. An instruction which, in effect, declares the quality of a homicidal act to be the same, whether perpetrated with or without a felonious intent, provided the perpetrator "brought on the difficulty or voluntarily entered into the same," is erroneous.

The State v. Herrell.

4. **Practice:** CONFLICTING INSTRUCTIONS. When two instructions are conflicting, it cannot be told which the jury took for their guide.

5. ———: INSTRUCTIONS. Instructions should not be given when there is no evidence upon which to base them.

6. **Murder:** INSTRUCTION. An instruction on murder in the first degree, which in effect declares that an intentional killing constitutes the crime, is erroneous.

7. ———: ADULTERY NO JUSTIFICATION: WHEN. After adulterous intercourse has taken place for a long series of years, with the full cognizance of a son, if he slay his mother's paramour in revenge, the adultery constitutes no justification.

*Appeal from Greene Circuit Court.*—HON. W. D. HUBBARD, Judge.

REVERSED AND REMANDED.

*O. H. Travers* for appellant.

(1) The motion to quash the indictment should have been sustained. The indictment does not charge that the wounding which produced the death was wilful, deliberate and premeditated. A cursory inspection even, of the indictment will reveal this defect. *State v. Reakey,* 1 Mo. App. 3; *State v. Snell,* 78 Mo. 241; *State v. Emerich,* 87 Mo. 110; *State v. Feaster,* 25 Mo. 324. (2) The court should not have instructed on any grade of homicide not shown by the evidence. *State v. Wilson,* 86 Mo. 520; *State v. Jones,* 14 Mo. App. 589; *State v. Greene,* 66 Mo. 631; *State v. Alexander,* 66 Mo. 148. And when the testimony shows a clear case of murder in the first degree or justifiable homicide, it is reversible error to instruct on any other than the first degree. *State v. Lane,* 64 Mo. 319. And when the only question is whether the act was done in self-defense or not, it is error to instruct on any grade of homicide except murder in the first degree. *State v. Alexander,* 70 Mo. 148; *State v. Talbott,* 73 Mo. 347. (3) The

court committed error in giving the other instruction on the part of the state.

*B. G. Boone,* Attorney General, for the State.

(1) The indictment is sufficient. After charging that the assault was made wilfully, feloniously, etc., the wounds inflicted are described and the indictment concludes, "and so the grand jurors aforesaid do say that the said Newton W. Herrell, the said Amos Ring, in manner and form and by the means aforesaid, feloniously, deliberately, premeditatedly, on purpose and of his malice aforethought, did kill and murder, against the peace and dignity of the state of Missouri." *State v. Snell,* 78 Mo. 240. (2) It does not appear that the defendant saved any exceptions to the action of the trial court in declaring the law to the jury. *State v. Bayne,* 88 Mo. 604.

SHERWOOD, J.—The indictment in this cause is as follows:

"The grand jurors of the state of Missouri, chosen and selected from the body of Taney county, in said state of Missouri, who, after being duly empanelled, charged and sworn, upon their oath, find and present that Newton W. Herrell, late of the county and state of Missouri, did, on or about the seventh day of October A. D., 1884, at said county of Taney, and state aforesaid, in and upon one Amos Ring, then and there being unlawfully, wilfully, feloniously, deliberately, premeditatedly, on purpose, and of his malice aforethought, make an assault, and with a certain pistol commonly called a revolver, then and there being loaded and charged with gun-powder and leaden bullets, and which said pistol was then and there held in the right hand of him, the said Newton W. Herrell, at, to and against, and in and upon him, the said Amos Ring, did

unlawfully, wilfully, feloniously, deliberately, premeditatedly, on purpose, and of his malice aforethought, shoot off and discharge, and by means and force of the gun-powder and leaden balls aforesaid, did give to him, the said Amos Ring, two wounds, which said wounds were then and there mortal wounds, one of said wounds being on the left side of the body of him, the said Amos Ring, near the fifth rib, penetrating and entering the body of him, the said Amos Ring, near said fifth rib, said wound being of the depth of six inches, and width of one-half inch, and the other said mortal wound being on the top of the head of him, the said Amos Ring, and said wound being then and there a mortal wound, being in depth about six inches, and width of one-half inch, of which said mortal wounds, he, the said Amos Ring, did then and there, on said seventh day of October, 1884, at the county of Taney and state of Missouri, instantly die. And so the grand jurors, aforesaid, do say that the said Newton Herrell, the said Amos Ring, in manner and form, and by the means aforesaid, feloniously, deliberately, premeditatedly, on purpose and of his malice aforethought, did kill and murder, against the peace and dignity of the state of Missouri.''

Under this indictment the defendant was tried, convicted of murder in the second degree and his punishment assessed at fifteen years in the penitentiary; judgment accordingly, from which judgment defendant appeals. Various errors are assigned for a reversal of the judgment, among them the refusal of the court below to hold the indictment insufficient on motion to quash and on motion in arrest.

I.  The indictment was insufficient in that it failed to charge that the homicidal act *itself* was done *feloniously*, etc. The failure thus to charge was not supplied by the allegation that the assault was made feloniously, nor by the concluding words of the indictment, nor by anything else therein contained. This position is abundantly sustained by authority. *State v. Feaster*, 25 Mo.

324 ; *Respublica v. Honeyman,* 2 Dall (Penn.) 228 ; 5 Bac. Ab. Indictment, G. p. 68 ; 2 Bishop's Crim. Proc., sec. 564. There· are authorities, however, for holding that an indictment will be made good, notwithstanding it fails to allege that the wound was feloniously, etc., given, provided that the words feloniously, etc., previously alleged, are connected with the mortal stroke by the words " *and then and there ;*" for in such case, the words feloniously, etc., will run through the subsequent allegations and thus connect them with the mortal stroke to which they are essential, as already seen. 1 East P. C. 346 ; 2 Hale P. C. 184 ; *State v. Lakey,* 65 Mo. 217 ; *State v. Steeley,* 65 Mo. 218 ; *State v. Sides,* 64 Mo. 383. In the present case it will be observed that this has not been done, nor the necessary connecting words used.

II.   Over the objections and exceptions of the defendant, a large number of instructions were given at the instance of the state ; *thirty-one* in all.   How the minds of the jury were to be, or were *enlightened* by such a mass of written matter it is impossible to tell.   *Three* instructions properly drawn will embrace every idea which they contain as well as the whole law of the case arising on the facts developed by the testimony.

III.   The defendant relied on the theory and fact of self-defense, and his testimony tended to support his plea.

Instruction number sixteen, in the longsome series, is the following :

"But if you believe from the testimony that Herrell was at the time purposely seeking Ring in order to bring on and did voluntarily enter into and engage in a combat or fight with Ring with the intent to shoot and kill or do Ring great bodily harm, then the law of self-defense does not arise in behalf of the defendant, and cannot excuse or justify him for killing Ring."

It declares the correct doctrine as announced by this court on former occasions. *State v. Hays,* 23 Mo.

287; *State v. Packwood*, 26 Mo. 340; *State v. Partlow*, 90 Mo. 608; *State v. Berkley*, 92 Mo. 41; *State v. Gilmore*, 95 Mo. 554; *State v. Parker*, 96 Mo. 382. Those cases, as well as all carefully considered cases in other jurisdictions, and all the text-writers, recognize as sound and wholesome law the principle that if a man bring on a difficulty, *with the purpose of wreaking his malice by slaying his adversary, or doing him some great bodily harm*, and actuated by such a felonious purpose, he does the homicidal act, then there is no self-defense in the case, and he is guilty of murder in the first degree, and nothing less.

The eighth instruction was as follows:

"The court instructs the jury that if you believe from the evidence in this case, that the defendant sought or invited the difficulty in which Ring was killed, or that he provoked or commenced or brought it on by any wilful act of his own, or that he voluntarily and of his own free will engaged in it, then and in that case you are not authorized to acquit him on the ground of self-defense. The right of self-defense does not avail as a defense in any case where the difficulty is sought for, and induced by the party, by any wilful act of his own or where he voluntarily and of his own free will enters into it."

This instruction is erroneous in that it cuts off the defendant from a *limited or qualified right of self-defense*, though actuated by no felonious intent, provided he "*brought on the difficulty*," and is condemned by the authorities before cited. Indeed a more monstrous proposition never found lodgment in print than that the quality of the homicidal act is the *same* whether it was perpetrated *with or without a felonious intent*, provided the perpetrator "brought on the difficulty or voluntarily entered into the same." The two instructions first quoted are, for the reasons given, in irreconcilable conflict and it cannot be told which one the jury

took for their guide in arriving at their verdict. *Gay v. Gillilan*, 92 Mo. 250 ; *State v. McNally*, 87 Mo. 644 ; *State v. Simms*, 68 Mo. 305 ; *State v. Mitchell*, 64 Mo. 191 ; *Frederick v. Allgaier*, 88 Mo. 598 ; *Thomas v. Babb*, 45 Mo. 384.

IV. Besides, there is no testimony that the defendant began the quarrel, and so the only effect of the instructions mentioned was to confuse and mislead the jury. *State v. Chambers*, 87 Mo. 406. Prosecuting attorneys throughout the state seem to regard an instruction containing the words "*brought on the difficulty*" as applicable to every case of homicide. Such an instruction seems to be their stock in trade, their *vade mecum*, to be indiscriminately applied in any and every case where death is the result of violence.

V. The sixth instruction is in these words

"He who wilfully, that is, intentionally, uses upon another at some vital part a deadly weapon, as a loaded revolver or a fire-arm, must, in the absence of qualifying facts, be presumed to know that the effect is likely to be death, and knowing this, must be presumed to intend the death which is the probable and ordinary consequence of such an act. And if such deadly weapon is used without just cause or provocation, he must be presumed to do it wickedly or from a bad heart. If therefore, you believe that the defendant took the life of Amos Ring by shooting him in a vital part with a revolver or pistol loaded with powder and leaden ball, with a manifest design to use such weapon upon him, and with sufficient time to deliberate, and fully form the conscious purpose to kill, and without sufficient reason or cause or extenuation, then such killing was murder in the first degree."

This instruction, so far as it goes, was taken from an instruction of the same number in *State v. Talbott*, 73 Mo. 347 ; but the remainder of that instruction in that case was as follows : "And while it devolves on the

state to prove the wilfulness, deliberation, premeditation and malice aforethought, all of which are necessary to constitute murder in the first degree; yet these need not be proved by direct evidence, but may be deduced from all the facts and circumstances attending the killing; and if the jury can satisfactorily and reasonably infer their existence from all the evidence, they will be warranted in finding the defendant guilty of murder in the first degree."

The instruction in this case, mutilated as it was by lopping off the material portion already set forth, was erroneous, in holding, as it does in effect, that an *intentional* killing, which, under numerous decisions of this court, is only murder in the *second* degree, was murder in the *first* degree. The instruction taken as a whole, as given in *Talbot's case*, is sufficiently clear, though not drawn in a very happy manner, but as given in the case at bar, plainly erroneous. *State v. Sharp*, 71 Mo. 218, and cases cited.

VI. The testimony disclosed by the record shows that when the defendant was some five years of age, his mother, Mrs. Herrell, and a little sister, left Tennessee in 1867, and came to Missouri with the deceased, and that Mrs. Herrell had been living in adultery with deceased until about six months prior to the homicide, when deceased was indicted for thus living in adultery and it seems was fined fifty dollars as a punishment therefor. All this testimony as to the deceased having lived in adultery with defendant's mother was wholly outside of the case, and constituted no palliation or mitigation of defendant's guilt of the homicide, and should not have been admitted. After adulterous intercourse has taken place for a long series of years, and a husband is fully cognizant of it, if he slay the paramour in revenge, the adultery constitutes no justification. *Sawyer v. State*, 35 Ind. 80, and cases cited. A like rule would certainly hold as regards a son being the avenger

of his mother's honor, when equally well acquainted with similar facts.

For the errors aforesaid, the judgment should be reversed and the cause remanded. BLACK and BRACE, JJ., concur; BARCLAY, J., not sitting.